UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHIRLEY HAYNES,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

                            /

Case No. No. 12-15148

District Judge George Caram Steeh

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

      Plaintiff Shirley Haynes brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #19] and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #14].

**I.   PROCEDURAL HISTORY**

      Plaintiff applied for DIB and SSI on July 15, 2009, alleging disability as of May 23, 2009 (Tr. 115). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on March 29, 2011 in Dallas, Texas before Administrative Law Judge ("ALJ")

Cora P. Williams (Tr. 32). Plaintiff, represented by attorney Dennis Little, testified by video conference from Oak Park, Michigan (Tr. 37-49). Vocational expert ("VE") Talesia Beasley also testified (Tr. 49-52). On April 20, 2011, ALJ Williams found Plaintiff not disabled (Tr. 28).

On September 17, 2012, the Appeals Council denied review of the claim (Tr. 1-6). Plaintiff filed suit in this Court on November 20, 2012.

## II. BACKGROUND FACTS

Plaintiff, born July 27, 1961, was 49 at the time of the administrative decision (Tr. 28, 115). She graduated from high school (Tr. 150) and worked previously as a driver and care giver (Tr. 147). She alleges disability as a result of spinal disc herniations and degenerative disc disease (Tr. 146).

### A. Plaintiff's Testimony

*Plaintiff's counsel noted that his client currently alleged disability as of the day after a May, 2009 determination of non-disability, stating her back and neck problems had worsened since that time* (Tr. 34, 57-64).

Plaintiff offered the following testimony:

She worked as machinist during 2005 and 2006 (Tr. 38). The position required her to lift up to 50 pounds (Tr. 38). Subsequently, she worked part time as a care giver, requiring her to take elderly people on errands, help them with self care tasks, and perform light housekeeping chores (Tr. 39). She estimated that the care giver position required her to lift

up to 250 pounds (Tr. 39). In addition to working as a machinist and care giver, she worked as an office cleaner, cashier, and driver (Tr. 39). The office cleaner and cashier positions required her to lift up to 30 and 75 pounds respectively (Tr. 40-41). The driving position entailed driving cars between a dealership and an auction site (Tr. 40-41).

Plaintiff experienced constant low back pain and intermittent pain in the thoracic and cervical spine (Tr. 41-42). She also experienced radiating leg pain and lower extremity weakness (Tr. 42). She fell three or four times a week due to leg weakness and required the use of a cane (Tr. 42). A recently implanted spinal cord stimulator helped "somewhat," but was "not the best" (Tr. 43). Motrin 800 and Vicodin eased her back pain but did not eliminate it altogether (Tr. 43). Pain medication caused the side effect of fatigue, requiring her to take three to four 15-minute naps each day (Tr. 43-44). She coped with her back and leg pain by walking around the house (Tr. 44). Daily pain and gripping problems in the right upper extremity caused Plaintiff to drop items (Tr. 44). Bouts of right upper extremity pain lasted for up to 45 minutes (Tr. 44). Back and extremity pain prevented her from concentrating for more than 15 minutes at a time (Tr. 45).

Plaintiff lived with her four adult children (Tr. 45). She performed light household chores but her "fear of the steps" prevented her from doing laundry (Tr. 45). She was unable to sit or stand for more than 15 minutes at one time and was unable to walk more than "four or five houses" without experiencing pain (Tr. 46-47). She was unable to lift more than a gallon of milk (Tr. 47). She was unable to read for more than 10 minutes at a time due to

pain (Tr. 47).

Plaintiff denied going to church or participating in social groups (Tr. 48). In response to questioning by her attorney, she stated that a January, 2010 automobile accident "re-aggravated" her back and extremity pain (Tr. 49).

### B. Medical Records

#### 1. Records Predating the Current Claim[1]

An August, 2006 MRI of the lumbar spine showed nerve root impingement of the L1 nerve root (Tr. 187). A September, 2006 MRI of the cervical spine showed impingement of the anterior thecal space at C3-C4 and C4-C5 (Tr. 184). Plaintiff reported pain in both arms (Tr. 185). Plaintiff reported back and upper extremity pain as a result of a June, 2006 automobile accident (Tr. 192). February, 2007 chiropractic records state that Plaintiff reported level "nine" pain on a scale of one to ten (Tr. 194). She exhibited a reduced range of motion and muscle spasms in both the cervical and lumbar spine (Tr. 196). The same month, treating records state that Plaintiff was ordered to abstain from all household, occupational, and recreational activities (Tr. 206). In March, 2007, Stephen Bartol, M.D. conducted an unremarkable examination, noting that he had not seen the August, 2006 MRI of the lumbar spine (Tr. 243). In April, 2007, internist William Gonte, M.D. recommended epidural injections (Tr. 225, 279). Dr. Bartol found that Plaintiff's "pain symptoms" were

---

[1]On May 26, 2009, ALJ Melvyn B. Kalt rejected Plaintiff's earlier application for benefits (Tr. 64). While the treating records predating that decision cannot be used to establish the current claim, they are included for background purposes.

"exaggerated" (Tr. 236). A June, 2007 CT of the lumbar spine showed "advanced degeneration" at L5-S1 (Tr. 281).

### 2. Records Created During the Relevant Period

In August, 2009, neurologist Roderick Claybrooks, M.D. examined Plaintiff, noting negative straight leg raising (Tr. 267). Dr. Claybrooks reviewed the August, 2006 MRI of the lumbar spine, but noted that Plaintiff reported "tolerable" symptoms (Tr. 268). He recommended continued conservative treatment (Tr. 268). September, 2009 treating notes state that Plaintiff was currently taking Vicodin (Tr. 271).

In January, 2010, Plaintiff sought emergency treatment after her car was rear-ended (Tr. 304-307). Emergency room records state that she exhibited a steady gait and appeared comfortable (Tr. 306). An MRI of the lumbar spine showed only "minimal degenerative changes" at L5-S1 (Tr. 336). An MRI of cervical spine was negative for abnormalities (Tr. 337). Other imaging studies were unremarkable (Tr. 308-309). Plaintiff underwent steroid injections to the lumbosacral spine in March and April, 2010 (Tr. 313, 317, 322, 382). In May, 2010, Plaintiff reported to neurologist Marvin Bleiberg, M.D. that the January, 2010 car accident worsened her condition (Tr. 326). Electrodiagnostic studies were negative for upper extremity radiculopathy or neuropathy (Tr. 329-332). A June, 2010 x-ray of the lumbosacral spine was also negative (Tr. 390). In July, 2010, psychologist Barbara Hofmann, Ph.D. found that Plaintiff experienced "mild" depression and anxiety (Tr. 367).

The following month, neurologist Louis N. Radden, D.O. implanted a dorsal spine

stimulator without complications (Tr. 378-379). In September, 2010, Dr. Radden stated that Plaintiff obtained significant relief from back and leg complaints from the stimulator (Tr. 376). He observed a normal gait with a normal range of hip motion (Tr. 377). In February, 2011 Dr. Radden stated that Plaintiff had experienced improvement since the implantation of the spinal stimulator (Tr. 369).

### 3.  Non-Treating Sources

In October, 2009Yung K. Seo, M.D. performed a consultative physical examination on behalf of the SSA (Tr. 288-293). Dr. Seo observed a limited range of motion in the lower extremities but no radicular symptoms (Tr. 290). Plaintiff did not require the use of a cane and was able to heel/toe walk (Tr. 290). She exhibited a mildly antalgic gait (Tr. 290). Dr. Seo found the absence of functional restrictions (Tr. 291).

The same month, Sonia S. Dewberry completed a non-examining Residual Functional Capacity Assessment on behalf of the SSA, finding that Plaintiff was capable of lifting ten pounds occasionally and less than ten pounds frequently; standing or walking for at least two hours each workday and sitting for six; and unlimited pushing and pulling in both the upper and lower extremities (Tr. 295). Dewberry found that Plaintiff could climb, balance, stoop, kneel, crouch, and crawl on an occasional basis only (Tr. 296).

Following the January, 2010 accident, Plaintiff received a "Disability Certificate," from a consultative source, stating that she was unable to work, drive, or engage in recreational activities until further notice (Tr. 350, 354). The source opined that injuries

sustained in the January, 2010 accident created "permanent and consequential limitations" (Tr. 354).

### C. Vocational Testimony

VE Beasley classified Plaintiff's past work as a machine operator as medium and unskilled; home health aide, medium/semiskilled; driver, light/unskilled; office cleaner, heavy/unskilled; cashier, light/semiskilled; truck unloader, heavy/semiskilled[2] (Tr. 50). The ALJ then posed the following question to the VE, taking into account Plaintiff's age, education, and limited work experience:

> [A]ssume that the hypothetical individual retains the residual functional capacity to perform work that requires the following: lifting and carrying no more than ten pounds occasionally, less than ten pounds frequently; standing and walking two hours in an eight-hour day; sitting, six; posturals are going to be all occasional. . . [T]he hypothetical individual is further restricted to work that does not demand repetitive bending or twisting at the waist; stooping, kneeling, crawling, climbing ladders. The hypothetical individual is further restricted to work that does not demand complex instructions or job tasks. In your opinion, could the hypothetical individual perform any of the [Plaintiff's] past relevant work? (Tr. 51).

The VE found that the above limitations would preclude all of Plaintiff's past relevant

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

work, but allow performance of the sedentary, unskilled jobs of document preparer (3,058 jobs in the Michigan economy); charge account clerk (1,423); and call-out operator (1,496) (Tr. 51-52). The VE stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 52). In response to questioning by Plaintiff's counsel, the VE testified that the need to take "frequent, unscheduled breaks" each day due to back pain would preclude all of the above-stated jobs (Tr. 52).

### D. The ALJ's Decision

Citing the medical records, ALJ Williams found the severe impairments of "degenerative disc disease of the lumbar spine with advanced changes at L5/S1, and a bulging disc in the cervical spine at C3-C5, with antalgic gait, chronic pain syndrome, and radiculitis" but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work with the following additional restrictions:

> The claimant can stand/walk for up to two hours, with occasional postural movements and no complex instructions or job tasks (Tr. 23).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform any of her former jobs, she could work as a document preparer, charge account clerk, and call out operator (Tr. 28).

The ALJ discounted Plaintiff's alleged severity of limitation, citing 2010 records showing that she was not taking medication for back pain (Tr. 25). The ALJ also cited

treating observations showing good balance, the absence of muscle atrophy, and good results from a spinal cord stimulator and epidural injections (Tr. 25). She also noted that the negative EMG undermined Plaintiff's claim of upper extremity limitations (Tr. 25).

### III.  STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### A.  The Credibility Determination

Plaintiff argues that the ALJ's credibility determination contains substantive error. *Plaintiff's Brief* at 4-6.  Citing *Rogers v. CSS,* 486 F.3d 234, 247 (6th Cir. 2007), she contends that the ALJ's Step two finding that she experienced degenerative disc disease, bulging cervical discs, an antalgic gait, chronic pain syndrome, and radiculitis contradicts the

determination that the allegations of limitation were not credible. *Id.* (citing Tr. 22).

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2. Plaintiff does not dispute the finding that she experienced lumbar and cervical disc disease resulting in an antalgic gait, pain, and radiculitis, but contends that her mental limitations were overlooked. *Plaintiff's Brief* at 4-6.

Plaintiff's primary argument for remand is based on the second prong of SSR 96-7p which directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [3]  Plaintiff argues, in effect, that the ALJ's rejection of the alleged

---

[3] In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

symptomology was not well articulated or supported. *Plaintiff's Brief* at 5-6.

This argument does not provide a basis for remand. In support of the credibility determination, the ALJ cited treating records showing that Plaintiff's condition improved following the July, 2010 implant of a spinal stimulator (Tr. 25). She cited April, 2010 studies showing the absence of upper extremity neurological conditions (Tr. 25). The ALJ noted that Plaintiff's allegations of concentrational deficiencies stood at odds with a July, 2010 psychological examination revealing only "mild" depression and anxiety (Tr. 26 citing 367). She observed that Plaintiff did not require pain medication for portions of the relevant period and that imaging studies stood at odds with the professed degree of limitation (Tr. 25-26). The ALJ acknowledged that the lack of objective evidence of pain was insufficient to discount allegations, but cited Plaintiff's own testimony that she was capable of the lifting requirements for sedentary work (Tr. 25-26).

My own review of the transcript supports the ALJ's findings. None of the treating observations suggest that Plaintiff's work related abilities were hampered by either medication side effects or a psychological condition. In August, 2009, Plaintiff reported that her symptoms were "tolerable" (Tr. 268). A consultative examiner found the absence of radicular symptoms of the lower extremities (Tr. 290). January, 2010 MRIs showing that previous disc herniations had resolved since the 2006 studies strongly support the inference that Plaintiff's condition improved, rather than deteriorated, since the May, 2009 decision (Tr. 184, 187, 336-337). Her allegation that her condition worsened after the January, 2010 car accident is flatly

contradicted by these studies and upper extremity testing showing the absence of radiculopathy or neuropathy (Tr. 329-330). Plaintiff's reliance on the earlier imaging studies in support of the disability claim is thus unavailing. Because the ALJ's credibility determination is well explained, generously supported by the record, and does not contain erroneous findings, it should remain undisturbed. *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

### B. The RFC

Plaintiff contends that the RFC found in the administrative opinion did not include all of her mental and physical limitations. *Plaintiff's Brief* at 6-9 (citing Tr. 23). On a related note, she argues that the omission of same limitations from the hypothetical question to the ALJ invalidates the VE's job findings. *Id.*

Contrary to this argument, substantial evidence supports the inclusion of certain limitations in the RFC and the omission of others. Although Plaintiff contends that her mental limitations were not adequately addressed, the ALJ cited a July, 2010 psychological evaluation showing that Plaintiff's symptomology was "mild" in support of the RFC (Tr. 25 citing 367). Aside from Plaintiff's claims, the transcript does not support the imposition of greater mental limitations than "no complex instructions or job tasks" as found in the RFC (Tr. 23). Plaintiff cites Dr. Bleiberg's May, 2010 records stating that she was unable to bend,

twist, dress herself, or perform housework. *Plaintiff's Brief* at 8 (citing 327). However, Dr. Bleiberg's treatment notes appear to be based on Plaintiff's claims of limitation rather than his own findings. Notably, the same records state that all electrodiagnostic studies were negative for either upper extremity radiculopathy or neuropathy (Tr. (Tr. 329-332). Plaintiff's argument that the hypothetical question to the VE did not include all of her professed limitations is defeated for identical reasons. Having rejected Plaintiff's allegations of limitation, the ALJ was not obliged to include discredited claims in the question to the VE. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include rejected allegations in the hypothetical limitations posed to the VE).

In closing, I note that while Plaintiff has not presented a particularly strong case for benefits, my recommendation should not be interpreted to trivialize her physical problems. Nonetheless, the ALJ's determination, well within the "zone of choice" accorded to the fact-finder at the administrative hearing, should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #19] and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #14].

Any objections to this Report and Recommendation must be filed within 14 days of

service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: November 13, 2013

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on November 13, 2013, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla for Michael Williams
Case Manager to the
Honorable R. Steven Whalen
